IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GONZALES SAENZ, K61926,<br><br>Plaintiff,<br><br>v.<br><br>R. BRANCH, M.D., et al.,<br><br>Defendants. | Case No. 16-5959 CRB (PR)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANTS' MOTIONS FOR CROSS-SUMMARY JUDGMENT AND TO BE RELIEVED FROM DEEMED ADMISSIONS**<br><br>(ECF Nos. 13, 18 & 26) |

Plaintiff Robert Gonzales Saenz, a state prisoner currently incarcerated at the Correctional Training Facility in Soledad, California (CTF), filed a pro se civil rights complaint under 42 U.S.C. § 1983 alleging denial of adequate medical care and retaliation for filing grievances regarding denial of adequate medical care. Per order filed on November 11, 2016, the court (Kim, M.J.) found that plaintiff's allegations appeared to state cognizable § 1983 claims for deliberate indifference to serious medical needs and retaliation against Drs. R. Branch and D. Bright, when liberally construed, and ordered the United States Marshal to serve these two named defendants at CTF.

Both plaintiff and defendants move for summary judgment or cross-summary judgment under Federal Rule of Civil Procedure 56 on the ground that there are no material facts in dispute and that they, respectively, are entitled to judgment as a matter of law. Defendants also claim qualified immunity and move to be relieved from matters deemed admitted under Federal Rule of Civil Procedure 36. The parties filed oppositions/responses and replies to the motions, which now are ripe for decision.

## I. BACKGROUND

Plaintiff is a 58-year-old prisoner diagnosed with "aortic stenosis, heart murmur, osteoarthritis, hernia and chronic constipation." Branch Decl. (ECF No. 27-3) ¶ 5. He has been incarcerated at CTF since January 2015.

Plaintiff claims that Dr. Branch, his assigned primary care physician at CTF, and Dr. Bright, the chief physician and surgeon at CTF, have been deliberately indifferent to his serious medical needs by failing to provide him with adequate medical care. Plaintiff specifically claims that defendants failed to provide him with adequate medical care for the following medical conditions: (1) abdominal pain derived from abdominal cramping and hernia, (2) pain in his feet derived from plantar fasciitis and bunions, and (3) pain in his hands derived from osteoarthritis. Plaintiff also claims that defendants retaliated against him for filing grievances against them regarding denial of adequate medical care by further denying him adequate medical care.

But as discussed below, defendants are entitled to summary judgment on plaintiff's denial of adequate medical care claims because the undisputed evidence in the record shows that defendants provided plaintiff with extensive and comprehensive medical care and treatment for his medical conditions and complaints, and plaintiff has not set forth sufficient evidence for a reasonable jury to find that any shortcomings in defendants' medical care and treatment amounted to deliberate indifference in violation of the Eighth Amendment. Defendants also are entitled to summary judgment on plaintiff's retaliation claims because plaintiff has not set forth sufficient evidence for a reasonable jury to find that defendants' medical care and treatment decisions were made in retaliation for plaintiff filing grievances against defendants.

## II. MOTION TO BE RELIEVED FROM DEEMED ADMISSIONS

Before addressing the merits of the parties' motion and cross-motion for summary judgment, the court must address defendants' motion to be relieved from deemed admissions. Federal Rule of Civil Procedure 36 allows a party to serve on another a written request to admit the truth of certain matters relating to the parties' pending dispute.

2

Fed. R. Civ. P. 36(a)(1). A matter is deemed admitted if the party to whom the request is directed fails to respond within 30 days of the request. Fed. R. Civ. P. 36(a)(3).

On April 21, 2017, plaintiff served a request for admissions on defendants. But defendants failed to provide plaintiff with written responses until July 14, 2017 – 54 days after plaintiff served the request. Defendants' counsel attributes the untimely response to a "complete oversight" on his part, Gower Decl. (ECF No. 26-1) ¶ 3, and, on behalf of defendants, moves for "an order permitting them to withdraw and/or amend" any deemed admissions, Defs.' Mot. for Relief (ECF No. 26) at 1.

Rule 36(b) provides that "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). "[T]he rule seeks to serve two important goals: truth-seeking in litigation and efficiency in dispensing justice." Conlon v. United States, 474 F.3d 616, 622 (9th Cir. 2007) (citing Fed. R. Civ. P. 36(b) advisory committee note). Accordingly, "a district court must specifically consider both factors under the rule before deciding a motion to withdraw or amend admissions." Id.

The first factor under Rule 36(b) is satisfied "when upholding the admissions would practically eliminate any presentation of the merits of the case." Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir. 1995). It is satisfied in this case. Defendants' admissions, either directly or indirectly, relate to the ultimate merits of the case. In the most significant of the admissions, Dr. Branch is deemed to have admitted that "as Plaintiff's PCP, delays and denial of proper examination and pain medication was a deliberate act." Gower Decl. Ex. A at 2-3. Although somewhat lacking in specificity, this admission goes directly to the merits of plaintiff's denial of adequate medical care claims. At a minimum, upholding such an admission unnecessarily complicates and confuses an accurate presentation of the merits of this case. Some of the other admissions relate less directly to the ultimate merits of the case, see, e.g., id. at 2 (admitting that plaintiff "complained of 'foot' pain during the initial interview/examination") while others have little bearing on the ultimate merits of the

3

1 case, see, e.g., id. at 4 (admitting "that CTF's 'North Clinic' is a professional registered nurse run facility"). Nevertheless, allowing defendants to withdraw the deemed admissions and for defendants' (late) responses to take their place, promotes the truth-seeking aim of Rule 36(b).

The second factor under Rule 36(b) asks whether withdrawal will prejudice plaintiff. Plaintiff, as the party relying on the deemed admissions, has the burden of proving prejudice. See Conlon, 474 F.3d at 622. "The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission will now have to convince the factfinder of its truth." Id. (citation omitted). "R]eliance on [admissions] in preparing a summary judgment motion does not constitute prejudice." Id. at 624. Rather, "prejudice must relate to the difficulty a party may face in proving its case at trial." Id.

Here, plaintiff has not met his burden of demonstrating prejudice. In his opposition to defendants' motion for relief, plaintiff argues that granting defendants' motion will have a "devastating prejudicial affect [sic] on the merits of plaintiff's claim." Pl.'s Opp'n (ECF No. 32) at 5. But requiring plaintiff to prove matters previously deemed admitted is not enough to constitute prejudice under Rule 36(b). See Conlon, 474 F.3d at 622. Moreover, plaintiff did not rely on the deemed admissions when preparing his motion for summary judgment. See Pl.'s Mot. for Summ. J. (ECF No. 13) (submitted on April 26, 2017 – within the thirty-day response period and before the matters in his request were deemed admitted under Rule 36). Nor did he rely on the deemed admissions when preparing his opposition to defendants' cross-motion for summary judgment. See Pl.'s Opp'n (ECF No. 28) at 14 (arguing "Branch intentionally failed to treat plaintiff's [conditions]") and at 3 (describing Branch's rejection of his attempt to inform her of his need for orthopedic shoes at his initial examination). Plaintiff has not established that he has relied on the deemed admissions or will be otherwise prejudiced by their withdrawal or amendment.

Because both factors under Rule 36(b) weigh in favor of withdrawal or amendment, defendants' motion to be relieved from deemed admissions (ECF No. 26) is GRANTED.

/

## III. MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving] party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Id. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of material in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

When the parties file cross-motions for summary judgment, the court must consider all the evidence submitted in support of the motions to evaluate whether a genuine dispute of material fact exists precluding summary judgment for either party. The Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001).

**B. Discussion**

Both plaintiff and defendants argue that they are entitled to summary judgment on plaintiff's cognizable § 1983 claims: (1) defendants have been deliberately indifferent to plaintiff's serious medical needs by failing to provide him with adequate medical care, and (2) defendants retaliated against plaintiff for filing grievances against them regarding denial of adequate medical care by further denying him adequate medical care.

**1. Deliberate Indifference**

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A "serious medical need" exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing Estelle, 429 U.S. at 104), overruled in part on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A prison official is "deliberately indifferent" if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Negligence is not enough for liability under the Eighth Amendment. Id. at 835–36 & n. 4. An "official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot under our cases be condemned as the infliction of punishment." Id. at 838. Instead, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing Wilson v. Seiter, 501 U.S. 294, 302–303 (1991)). Prison officials violate their constitutional obligation only by "intentionally denying or delaying access to medical care." Estelle, 429 U.S. at 104–05. Further, "if the harm is an 'isolated exception' to the defendant's 'overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted)).

6

A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is generally insufficient to establish deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058, 1059–60 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). In order to prevail on a claim involving choices between alternative courses of treatment, a prisoner-plaintiff mush show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. Toguchi, 391 F. 3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff specifically claims that defendants Drs. Branch and Bright have been deliberately indifferent to his serious medical needs by failing to provide him with adequate medical care for the following medical conditions: (1) abdominal pain derived from abdominal cramping and hernia, (2) pain in his feet derived from plantar fasciitis and bunions, and (3) pain in his hands derived from osteoarthritis.

### a. Plaintiff's Abdominal Pain

The undisputed evidence in the record shows that plaintiff has suffered from abdominal pain since he arrived at CTF on January 2015. At his first appointment with Dr. Branch on February 2015, plaintiff complained of abdominal cramping and was prescribed medications for intestinal cramping and for pain relief. Branch Decl. ¶ 6. Dr. Branch also ordered lab work on plaintiff. Id. On March 9, 2015, Dr. Branch again examined plaintiff, who reported abdominal pain in the upper abdomen and not having had a bowel movement or solid food in three days. Id. ¶ 7. After consulting with Dr. Sweet, Dr. Branch determined that plaintiff's condition was urgent enough to require an immediate transfer to Natividad Medical Center (NMC), where he received exploratory surgery to examine a potential small bowel obstruction (SBO). Id. ¶¶ 7–9. No SBO was found and, after recovering at NMC, plaintiff returned to CTF on

7

1   March 26, 2015.  Id. at 10.  But the day after his return, plaintiff reported persistent

2   cramping and vomiting, and was urgently evaluated by Dr. Lam and transported by

3   ambulance back to NMC.  Id. ¶ 11.  At NMC plaintiff again was examined and this time

4   found to have a SBO with a "likely transition point in the right lower quadrant [of the

5   abdomen] at the sight of the hernia."  Id.  Surgeons at NMC operated on plaintiff to repair

6   the hernia on April 9, 2015, id. ¶ 12, and he returned to CTF on April 29, 2015, id. ¶ 13.

7   Plaintiff has complained of ongoing abdominal pain since returning to CTF.  But

8   the undisputed facts in the record show that Dr. Branch and other medical personnel at

9   CTF have seen plaintiff on numerous occasions regarding his abdominal pain, and have

10  evaluated and treated the pain with various medications.  See id. ¶¶ 15 (May 12, 2015), 16

11  (July 9, 2015), 17 (July 28, 2015), 18 (August 11, 2015), 19 (August 28, 2015), 20

12  (September 2, 2015), 21 (September 28, 2015), 22 (October 8, 2015), 23 (October 28,

13  2015), 25 (November 5, 2015), 26 (November 10, 2015), 27 (November 13, 2015), 28

14  (December 4, 2015), 28a (December 18, 2016), 29 (January 1, 2016) 30 (January 8, 2016),

15  31 (January 21, 2016), 32 (February 4, 2016), 33 (February 16, 2016), 34 (February 18,

16  2016), 36 (March 3, 2016), 38 (March 18, 2016), 40 (April 13, 2016), 41 (April 18, 2016),

17  43 (May 9, 2016), 45 (May 23, 2016), 47 (June 16, 2016), 49 (July 1, 2016), 52 (August

18  22, 2016), 53 (October 10, 2016), 61 (January 30, 2017), 62 (March 20, 2017).  Dr. Branch

19  also has adjusted and altered the medications according to plaintiff's feedback on their

20  efficacy and the symptoms plaintiff has presented.  See id. ¶¶ 17, 22, 27, 28.  In addition,

21  Dr. Branch has continued to assess the cause of plaintiff's repeated complaints of

22  abdominal pain by ordering further evaluations, including labs, see id. ¶¶ 20, 30, 32, x-

23  rays, see id. ¶¶ 22, 30, CT scans, see id. ¶¶ 25, 45, and referrals to GI specialists, see id. ¶

24  25, and has discussed with plaintiff behavioral and dietary changes to help alleviate his

25  symptoms, see id. ¶¶ 18 (providing instructions on how to avoid using abdominal

26  muscles), 45 (discussing plaintiff's diet).

27  Plaintiff does not dispute that Dr. Branch has treated him extensively for abdominal

28  pain; he instead claims that Dr. Branch has failed to adequately treat him because she has

8

not gotten to the root cause of his abdominal pain. Plaintiff specifically claims that since his April 9, 2015 hernia repair surgery, his hernia has returned, causing him extreme pain, yet Dr. Branch has continued to focus her treatment on his constipation symptoms rather than on his hernia and SBO issues.

Plaintiff's disagreement with Dr. Branch and other medical personnel regarding the cause of his abdominal pain and treatment is not enough to establish deliberate indifference in violation of the Eighth Amendment. See Toguchi, 391 F.3d at 1058; Franklin, 662 F.2d at 1344. Moreover, the undisputed evidence in the record shows that Dr. Branch, in addition to treating plaintiff's abdominal pain with various medications, assessed the cause of plaintiff's abdominal symptoms by ordering various studies and evaluations. Dr. Branch interpreted plaintiff's x-ray studies to be consistent with "chronic constipation" and not with SBO, Branch Decl. ¶¶ 19, 30, and other medical professionals counseled against plaintiff's request for another hernia surgery because "the small size of the hernia rendered it low risk for incarceration" and "further surgery could increase [plaintiff's] risk of having another SBO in the future," id. ¶ 41. (Medical professionals also counseled against plaintiff's request for narcotics for pain management because "narcotics cause constipation." Id.) After Dr. Branch "tried enough conservative protocols to relieve [plaintiff's] abdominal complaints," she ordered a CT scan and submitted a request for hernia surgery so "other physicians [could] review the file and determine if hernia surgery might be appropriate." Id. ¶ 47. But the request was reviewed for medical necessity by Dr. Bright, the chief physician and surgeon at CTF, and denied on the ground that plaintiff's CT scan showed "no evidence of inflammation or obstruction that would cause [plaintiff's] symptoms." Bright Decl. (ECF No. 27-1) ¶ 7. As Dr. Bright stated in his denial decision, "[i]t does not appear that [petitioner's] symptoms are due to his umbilical hernia and thus fixing it would not improve his symptoms." Id. In Dr. Bright's medical judgment, "hernia surgery would not have been an effective means of improving [plaintiff's] medical condition at the time." Id.

Defendants are entitled to summary judgment on plaintiff's claim of denial of

9

adequate care for his abdominal pain because plaintiff has not set forth sufficient evidence for a reasonable jury to find that the course of treatment Drs. Branch and/or Bright chose was medically unacceptable under the circumstances and that they chose that course in conscious disregard of an excessive risk to plaintiff's health. See Toguchi, 391 F.3d at 1058. While the record reflects that defendants' course of treatment did not fully resolve plaintiff's abdominal symptoms, this is not enough for a reasonable jury to find that defendants were deliberately indifferent to plaintiff's abdominal pain. No reasonable jury could find on the evidence in the record that Drs. Brach and/or Bright knew that plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it. See Farmer, 511 U.S. at 837. Defendants are entitled to summary judgment on plaintiff's claim of denial of adequate medical care for his abdominal pain as a matter of law. See Celotex, 477 U.S. at 323.

### b. Plaintiff's Foot Pain

Plaintiff claims denial of adequate medical care for foot pain due to plantar fasciitis and bunions. Plaintiff alleges that he brought up his plantar fasciitis at his initial appointment with Dr. Branch in February 2015 and explained that he had not been permitted to bring his orthopedic shoes and insoles with him to CTF when he transferred correctional facilities in January 2015. According to plaintiff, Dr. Branch "refused to verify the issuance of the shoes/insoles, and would not attend to the foot pain" at that time. Pl.'s Mot. for Summ. J. at 3. Dr. Branch denies that plaintiff raised any complaint about foot pain at the initial February 2015 appointment, and instead claims that it was not until plaintiff's July 28, 2015 appointment with her that plaintiff first complained of foot pain and stated that he was no longer getting the pain medication Naproxen for it. See Branch Decl. ¶¶ 6, 17. But the timing of plaintiff's initial complaint of foot pain is not material to the determination of his claim.

The undisputed evidence in the record shows that plaintiff received the pain medication Naproxen (500 mg. twice daily) through an auto-fill prescription from February 4, 2015 through May 5, 2015. See Branch Decl. Ex. A (pl.'s medical records) at

AG00632. On July 28, 2015, plaintiff complained of "left foot pain" during his appointment with Dr. Branch and told her that he was no longer getting Naproxen for it. Branch Decl. ¶ 17. In response, Dr. Branch "provided a Naproxen prescription for [plaintiff's] foot pain" and adjusted his other prescriptions for abdominal pain. Id. On October 28, 2015 plaintiff met with Dr. Mulligan-Pfile in response to an appeal he filed against Dr. Branch regarding treatment of his left-foot pain and abdominal pain. Id. ¶ 23. Dr. Mulligan-Pfile x-rayed plaintiff's foot and did not find evidence of "fracture, dislocation, or subluxation," and only found "mild degenerative changes." Id. No treatment other than existing pain medication prescriptions was ordered for plaintiff's foot pain. But at a follow-up appointment with Dr. Branch on November 13, 2015, plaintiff again brought up pain in his left foot, as well as pain in his right foot. Id. ¶ 27. Dr. Branch ordered x-rays of both feet, which revealed a mild bunion in plaintiff's right foot, and submitted an order for gel insoles to alleviate plaintiff's foot pain. Id. On January 8, 2016, when plaintiff again complained of foot pain due to narrow shoes, Dr. Branch ordered bunion cushions for plaintiff. Id. ¶ 30. On February 16, 2016, plaintiff raised continued pain in his right foot and Dr. Branch ordered therapeutic shoes for him. Id. ¶ 33. The therapeutic shoes were delivered to plaintiff on April 12, 2016. See Pl.'s Mot. for Summ. J. Ex. C.

Defendants are entitled to summary judgment on plaintiff's claim of denial of adequate care for his foot pain because plaintiff has not set forth sufficient evidence for a reasonable jury to find that the course of treatment Dr. Branch chose was medically unacceptable under the circumstances and that she chose that course in conscious disregard of an excessive risk to plaintiff's health. See Toguchi, 391 F.3d at 1058. No reasonable jury could find on the evidence in the record that Dr. Brach knew that plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it. See Farmer, 511 U.S. at 837. Even if Dr. Branch overlooked plaintiff's foot pain at their initial appointment, and even if Dr. Branch should have ordered therapeutic shoes for plaintiff at an earlier point in time, as plaintiff claims, her actions, when viewed

11

1   in the context of the overall medical care and treatment she provided plaintiff for his foot

2   pain, cannot be said to have amounted to more than medical negligence not actionable

3   under § 1983. See id. at 835–36 & n. 4; see also Jett v. Penner, 439 F.3d 1091, 1096 (9th

4   Cir. 2006) ("isolated exception" to providing medical care, remedied by subsequent

5   medical care, and in the context of the "overall treatment of the prisoner," not sufficient to

6   create genuine issue for trial on § 1983 claim of deliberate indifference). Defendants are

7   entitled to summary judgment on plaintiff's claim of denial of adequate medical care for

8   his foot pain as a matter of law. See Celotex, 477 U.S. at 323.

### c. Plaintiff's Hand Pain

The undisputed evidence in the record shows that plaintiff first raised the issue of hand pain when he complained of pain in his right hand at his February 16, 2016 appointment with Dr. Branch. See Branch Decl. ¶ 33. Dr. Branch responded by ordering x-rays of plaintiff's hand, which revealed "no evidence of fracture, dislocation, or subluxation," and showed only "mild arthritis." Id. Plaintiff claims that Dr. Branch failed to adequately treat his hand pain after the x-rays she ordered confirmed osteoarthritis.

The management of plaintiff's hand pain from "mild arthritis" must be viewed in the context of the pain treatment plaintiff received for his other conditions. At the February 16, 2016 appointment plaintiff first complained of pain in his right hand, he also complained of chest pains and possible heart murmur, and continued abdominal and left-foot pain. Id. Dr. Branch responded by ordering: (1) an urgent echocardiogram to evaluate plaintiff's heart, (2) a colonoscopy to evaluate plaintiff's continued abdominal issues, (3) therapeutic shoes for plaintiff's continued foot pain, and (4) x-rays to evaluate plaintiff's hand pain. Id. While plaintiff suggests that Dr. Branch then should have prescribed him stronger pain medication than he already was receiving for ongoing abdominal and foot pain (i.e., various nonsteroidal anti-inflammatory drugs (NSAIDs)), plaintiff has not set forth sufficient evidence for a reasonable jury to find that the course of treatment Dr. Branch chose – to treat plaintiff's mild arthritis with the NSAIDs he already was receiving – was medically unacceptable under the circumstances and that she chose

12

that course in conscious disregard of an excessive risk to plaintiff's health. See Toguchi, 391 F.3d at 1058. No reasonable jury could find on the evidence in the record that Dr. Brach knew that plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it. See Farmer, 511 U.S. at 837. After all, the undisputed facts in the record show that Dr. Branch and other medical professionals considered plaintiff's requests for stronger pain medications, but rejected them on grounds that stronger pain medications such as narcotics were not medically indicated for plaintiff. See, e.g., Branch Decl. ¶ 41 (noting that Dr. Mindoro counseled against plaintiff's request for narcotics for pain management because "narcotics cause constipation"); see also Pl.'s Mot. for Summ. J. at 15, 17 (noting that Dr. Branch told plaintiff that he did not qualify for alternative pain medications under CDCR clinical guidelines for effective assessment, treatment and management of pain). Defendants are entitled to summary judgment on plaintiff's claim of denial of adequate medical care for his hand pain as a matter of law. See Celotex, 477 U.S. at 323.

### C. Retaliation

To prevail on a First Amendment retaliation claim, a prisoner must show: (1) that a state actor took some adverse action against a prisoner (2) because of (3) that prisoner's protected conduct, that such action (4) chilled the prisoner's exercise of his First Amendment rights, and that (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).

The prisoner must prove all the elements of a retaliation claim, including the absence of legitimate correctional goals for the conduct of which he complains. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). But the prisoner need not prove a total chilling of his First Amendment rights; that his First Amendment rights were chilled, though not necessarily silenced, is enough. Rhodes, 408 F.3d at 569.

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" Pratt, 65 F.3d at

13

1   807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). In particular, courts should

2   "'afford appropriate deference and flexibility' to prison officials in the evaluation of

3   proffered legitimate penological reasons for conduct alleged to be retaliatory." Id.

4   Plaintiff claims that defendants Drs. Branch and Bright retaliated against him for filing grievances against them for denial of adequate medical care by further denying plaintiff adequate medical care. Plaintiff specifically alleges that Dr. Branch "set aside medical necessity, and elected to retaliate against plaintiff for the use of[] the staff complaint process" by providing plaintiff "little to no treatment for plaintiff's medical needs," Pl.'s Mot. Summ. J. at 23, and that Dr. Bright retaliated against plaintiff by denying plaintiff's request for hernia surgery and denying plaintiff adequate pain medications, id. at 30–31. Plaintiff adds that defendants also verbally abused and harassed him – on one occasion, when Dr. Branch was unable to see plaintiff and "noticed plaintiff standing in front of her office," she "stated 'get the hell away from my office, you won't be seen today' and 'appeal that,'" id. at 18, and on another occasion, when Dr. Bright was interviewing plaintiff regarding a staff complaint, Dr. Bright told plaintiff "you're a damn inmate, my staff is instructed to give minimal care . . . [you're] just a sex offender . . . no one will believe you," id. at 10.

18  Although regrettable, defendants' alleged verbal abuse and harassment of plaintiff is neither actionable under § 1983, see Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) (allegations of verbal abuse and harassment fail to state a claim under § 1983), overruled in part on other grounds by Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008), nor sufficient evidence for a reasonable jury to find that plaintiff's filing of grievances against Drs. Branch and Bright caused either one of them to adversely alter their course of medical treatment for plaintiff, see Rhodes, 408 F.3d at 567–68. As discussed above, plaintiff received extensive and comprehensive medical care and treatment for his medical conditions and complaints at CTF. Defendants note, and the record supports, that plaintiff was "treated by medical professionals on at least 45 occasions (or approximately one doctor visit/consultation every three weeks)" between

February 2015 and May 2017. Defs.' Reply (ECF No. 34) at 2. Plaintiff has not provided any probative evidence that the care and treatment he received was based on a retaliatory motive rather than on defendants' medical judgment. His claim that defendants' treatment decisions were retaliatory in nature is based on nothing more than speculation and that is not enough to defeat defendants' motion for summary judgment. See Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014) (speculation that defendants acted out of retaliation not sufficient to defeat summary judgment). Defendants are entitled to summary judgment on plaintiff's retaliation claim as a matter of law. See Celotex, 477 U.S. at 323.[1]

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (ECF No. 13) is DENIED and defendants' cross-motion for summary judgment (ECF No. 18) is GRANTED.

**IT IS SO ORDERED.**

Dated: December 12, 2017

CHARLES R. BREYER
United States District Judge

---

[1] Defendants also are entitled to qualified immunity from damages on plaintiff's § 1983 claims because a reasonable prison medical official could have believed that his or her conduct was lawful under the circumstances. See Saucier v. Katz, 533 U.S. 194, 201-02 (2001). A reasonable prison medical official could have believed that the course treatment Drs. Branch and Bright chose for plaintiff was medically appropriate and therefore was lawful.